United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 28, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

Summary Calendar
No. 04-30547

---

MATTIE MAE AMOS

Plaintiff - Appellant

v.

PALMETTO GOVERNMENT BENEFIT ADMINISTRATOR; KATHY GRIFFIN,
Palmetto Government Benefit Administrator; DEBBIE DIXON,
Palmetto Government Benefit Administrator Supervisor; BONNIE
MICHALSKI, Palmetto Government Benefit Administrator
Technician; KEN GODBOLD, Palmetto Government Benefit
Administrator Supervisor; ROCKY MOUNTAIN HEALTH SYSTEMS;
SHAWNDRA WHITE; CONRAD & ASSOCIATES; BLUE CROSS & BLUE
SHIELD OF NEW MEXICO; BLUE CROSS AND BLUE SHIELD OF SOUTH
CAROLINA; BLUE CROSS & BLUE SHIELD ADMINISTRATOR;
TRI-SPAN, Incorporated

Defendants - Appellees

---

Appeal from the United States District Court for the
Western District of Louisiana, Lafayette
No. 03-CV-1814

---

Before KING, Chief Judge, and JONES and DENNIS, Circuit Judges.

PER CURIAM:[*]

This case arises out of Mattie Amos's unsuccessful pro se
attempts to sue certain Medicare intermediaries and individuals
associated with them. To date, Amos, the plaintiff-appellant,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

has filed three such suits, all of which have been dismissed. She now appeals the dismissal of her third lawsuit. For the following reasons, we AFFIRM the judgment of the district court.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Amos is a Louisiana resident who owns a home health care agency, P.D.C. Health Care ("PDC"). PDC offers home health services to patients receiving Medicare benefits. During the relevant time periods, the United States Department of Health and Human Services ("HHS") contracted with several private insurance companies to act as fiscal intermediaries between Medicare and PDC, including Blue Cross & Blue Shield ("BCBS") of New Mexico, Palmetto Government Benefit Administrators ("PGBA"), and BCBS of South Carolina. These intermediaries were, inter alia, in charge of processing PDC's Medicare reimbursement claims.

On April 30, 2001, Amos, proceeding pro se, sued BCBS of New Mexico and five individual defendants in the Western District of Louisiana for failing to approve Medicare claims submitted by PDC. According to Amos's lawsuit, these defendants falsified records in an effort to steal millions of dollars from her business. The individual defendants responded by filing a motion to dismiss, and the claims against them were dismissed at the outset of the litigation pursuant to FED. R. CIV. P. 12(b)(4) & (5). BCBS of New Mexico then moved to dismiss the complaint because of Amos's failure to exhaust her administrative remedies.

On June 7, 2002, before the district court ruled on BCBS of New Mexico's motion to dismiss, Amos re-filed her action against the individual defendants in another division of the Western District of Louisiana. On August 7, 2002, this new case was consolidated with the case still pending against BCBS of New Mexico. On November 6, 2002, a magistrate judge issued a report and recommendation suggesting that the district court dismiss all of Amos's claims because she had not exhausted her administrative remedies. On December 3, 2002, the district court adopted the magistrate judge's recommendations and dismissed Amos's claims for lack of subject matter jurisdiction. On June 18, 2003, this court affirmed the judgment of the district court in an unpublished decision. See Amos v. Blue Cross NM, No. 03-30064, 2003 WL 21756364 (5th Cir. June 18, 2003).

Undeterred, Amos, proceeding pro se and in forma pauperis, filed yet another complaint in the Western District of Louisiana on September 29, 2003. In this complaint, Amos sued BCBS of New Mexico, BCBS of South Carolina, PGBA, Kathy Griffin (an employee of PGBA), Debbie Dixon (a PGBA supervisor), Bonnie Michalski (a PGBA technician), Ken Godbold (a PGBA supervisor), BCBS Administrator, Rocky Mountain Health Systems, Shawndra White, Tri-Span, Inc. (collectively, the "federal defendants"), and Conrad & Associates ("Conrad"). Amos had previously named five of these parties as defendants in her April 30, 2001, complaint:

3

BCBS of New Mexico, Kathy Griffin, Debbie Dixon, Bonnie Michalski, and Ken Godbold.

Amos's September 29, 2003 complaint, similar to her prior complaints, alleged that certain Medicare intermediaries: (1) failed to approve Medicare claims submitted by PDC; and (2) falsely claimed that they made overpayments to PDC. According to this complaint, these intermediaries are still claiming monies not due to them and are withholding monies due to Amos in an attempt to defraud her. Specifically, Amos alleges that BCBS and PGBA have colluded with each other to defraud her. Furthermore, she states that the defendants "put together an elaborate scheme that successfully stole millions of dollars from plaintiff and her company through fraud and falsification of records to two separate governmental agencies." Amos also claims that PGBA wrongfully took monies for overpayments totaling hundreds of thousands of dollars, although she does not specify precisely when this taking occurred.

While Amos's latest complaint is difficult to comprehend and does not specify precisely how the defendants took money from her, a review of the record shows that her claims relate to two actions taken by BCBS of New Mexico. In 1993, BCBS of New Mexico determined that PDC had been overpaid in the amount of $465,953. Accordingly, it issued a Notice of Program Reimbursement on September 7, 1993, notifying PDC of the overpayment and of its right to appeal within 180 days. At the time that Amos's prior

4

complaints were dismissed in 2002 for failure to exhaust her administrative remedies, Amos had not appealed this overpayment determination. However, on August 23, 2003, approximately eight months after the dismissal of her prior claims and nearly ten years after the issuance of the 1993 Notice of Program Reimbursement, Amos filed an appeal of this overpayment determination. This appeal is still pending. Similarly, BCBS of New Mexico notified PDC of another overpayment of $318,540 on September 7, 1994, and it once again gave PDC 180 days to appeal the Notice of Program Reimbursement. Amos did file a timely appeal of this overpayment determination. However, on July 23, 2002, the HHS's Provider Reimbursement Review Board ("PRRB") dismissed this appeal because Amos failed to appear at the hearing on the appeal.

Shortly after Amos filed her September 29, 2003 complaint, all of the defendants filed motions to dismiss. On April 27, 2004, a magistrate judge issued a report and recommendation suggesting that the district court grant the defendants' motions to dismiss. The federal defendants (i.e., all defendants other than Conrad) moved to dismiss for lack of subject matter jurisdiction because Amos failed to exhaust her administrative remedies prior to filing suit. The magistrate judge recommended that all claims against the federal defendants be dismissed for this reason. Conrad, an accounting firm that audited reports submitted by Amos to PGBA, also moved to dismiss on a number of

5

grounds.  The magistrate judge recommended that Amos's claims against Conrad be dismissed because they were baseless (i.e., because Amos only mentioned Conrad in her jurisdictional allegations and in her prayer for relief).  The magistrate judge also included a "Sanctions" section in her report.  In this section, she stated that "[i]n light of the clearly duplicative filings by Amos, plaintiff is warned that future filings of frivolous suits may result in sanctions, including the assessment of attorneys fees and costs against plaintiff."  The magistrate judge then concluded that "in order to prevent future filings of duplicative cases containing the same procedural defects, the undersigned recommends that the court require Amos to obtain leave of court to file future cases in any office of the Federal Court in the Western District of Louisiana."

On May 14, 2004, the district court accepted the magistrate judge's recommendations, dismissed Amos's claims, and ordered Amos not to file future claims without first obtaining leave of court.  Amos now appeals the district court's dismissal of her case.

## II.  STANDARD OF REVIEW

This court reviews a dismissal under FED. R. CIV. P. 12(b)(6) de novo, applying the same standards as the district court. Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam).  A complaint will be dismissed under Rule 12(b)(6) only

6

if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Similarly, this court reviews questions of subject matter jurisdiction de novo. Bissonnet Invs. LLC v. Quinlan (In re Bissonnet Invs. LLC), 320 F.3d 520, 522 (5th Cir. 2003).

Pro se pleadings are held to less stringent standards than formal pleadings drafted by lawyers. Miller v. Stanmore, 636 F.2d 986, 988 (5th Cir. Unit A Feb. 1981). However, even if a plaintiff is proceeding pro se, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Fernandez-Montes v. Allied Pilots Ass'n, 987 F.2d 278, 284 (5th Cir. 1993).

### III.  ANALYSIS

On appeal, Amos claims that the district court erred when it: (1) refused to grant default judgment in her favor after the defendants failed to file timely responses to her September 29, 2003 complaint; (2) found that she had not exhausted her administrative remedies; (3) concluded that the sixty-day limitations period for filing a civil action had expired before she filed the present lawsuit; and (4) granted Conrad's motion to dismiss.  Below, we address each of these arguments in turn.

### A.    Failure To Grant Default Judgment

7

First, Amos claims that the district court erred by not granting default judgment in her favor when the defendants failed to respond in a timely manner to her complaint. This claim fails because the defendants filed timely responses to Amos's complaint.

The record in the present case indicates that the district court granted several extensions of time for the defendants to file their responsive pleadings to Amos's September 29, 2003 complaint. Ultimately, it gave Conrad until December 24, 2003 to file its responsive pleading. On December 5, 2003, Conrad filed a timely motion to dismiss. Likewise, the district court gave the remaining defendants until January 1, 2004 to file their responsive pleadings. They jointly filed a timely motion to dismiss on December 30, 2003. Accordingly, none of the defendants failed to file a timely response to Amos's complaint, as Amos alleges. Moreover, even if one or more of the defendants filed a late response--which they did not--this circuit has "adopted a policy in favor of resolving cases on their merits and against the use of default judgments." Rogers v. Hartford Life and Accident Ins. Co., 167 F.3d 933, 936 (5th Cir. 1999); Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n, 874 F.2d 274, 276 (5th Cir. 1989) ("Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by the courts only in extreme situations." (internal footnotes omitted)). Finally, the federal defendants are considered agents of the federal

8

government.  See Peterson v. Weinberger, 508 F.2d 45, 51-52 (5th Cir. 1975) (holding that fiscal intermediaries that processed Medicare reimbursement claims were agents of the federal government).  Accordingly, the district court could not enter default judgment against them because FED. R. CIV. P. 55(e) prohibits default judgment against the government and employees and agencies thereof.  For all of these reasons, the district court did not err when it refused to grant Amos's request for default judgment.

## B.    Exhaustion Of Administrative Remedies

Second, Amos contends that the district court erred when it found that she had failed to exhaust her administrative remedies before filing the present lawsuit.  In support of this claim, Amos appears to argue that the PRRB cannot hear certain of her claims (e.g., her theft, fraud, intimidation, and harassment claims).  Hence, she appears to argue that it would be futile for the district court to require her to exhaust her administrative remedies.  Amos's arguments in this regard fail.

Under 42 U.S.C. § 405, a party may file a lawsuit pertaining to a Medicare reimbursement dispute only after exhausting her administrative remedies.[1]  Specifically, a company or individual who is unhappy with a determination made by a Medicare

---

[1]    While 42 U.S.C. § 405 sets forth Social Security review procedures, the relevant provisions of this statute are made applicable to Medicare disputes by 42 U.S.C. § 1395ii.

intermediary may request a hearing before the PRRB within 180 days of the issuance of the Notice of Program Reimbursement, provided that the amount in controversy is greater than $10,000. 42 U.S.C. § 1395oo; 42 C.F.R. § 405.1841(a). After conducting a hearing, the PRRB can affirm, reverse, or modify the fiscal intermediary's determination. 42 C.F.R. § 405.1841(b). The Secretary of HHS then has sixty days within which it may affirm, reverse, or modify the PRRB's decision. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 403.1875. The company or individual that filed the appeal has sixty days from the date of the Secretary's decision to file a civil action. 42 U.S.C. § 1395oo(f). The Supreme Court has recognized that a party may not file a civil suit regarding a reimbursement claim under the Medicare Act until it has exhausted its administrative remedies. See Heckler v. Ringer, 466 U.S. 602, 617-19 (1984) (dismissing a reimbursement dispute under the Medicare Act for failure to exhaust administrative remedies); Weinberger v. Salfi, 422 U.S. 749, 764 (1975) (holding that when a party is required to exhaust administrative remedies before filing suit, a final administrative decision is a jurisdictional prerequisite to suit).

In the present case, Amos has failed to exhaust her administrative remedies. With respect to the 1993 overpayment determination, Amos has only recently filed an appeal. Her appeal appears to be untimely, since it was filed many years

10

after the 180-day limitations period for filing it expired.[1] Nevertheless, since Amos only recently filed her appeal, the PRRB has yet to render a decision on it. Accordingly, no final agency decision regarding this claim exists, and there is no basis for this court to exercise jurisdiction over this claim.

With respect to the 1994 overpayment determination, Amos filed a timely appeal, which was dismissed by the PRRB because Amos failed to show up at the hearing on the appeal. The magistrate judge found that by failing to attend the hearing, Amos failed to exhaust her administrative remedies. Similarly, according to the federal defendants, the PRRB's dismissal of her claim was not a final agency decision and, accordingly, Amos has not exhausted her administrative remedies. If the PRRB's dismissal was not a final agency decision, then Amos has failed to exhaust her administrative remedies regarding the 1994 overpayment determination, and the district court lacked jurisdiction to hear her lawsuit regarding it. Conversely, if Amos is correct and the PRRB's dismissal was a final agency decision, the district court still lacked jurisdiction to hear Amos's lawsuit regarding it because she did not file suit within the sixty-day limitations period (the PRRB dismissed Amos's claim on July 23, 2002, but Amos did not file this lawsuit until more

---

[2]    The 180-day period for filing an appeal of the September 1993 overpayment determination expired in March 1994, but Amos did not file her appeal until August 2003.

11

than a year later, on September 29, 2003).  See 42 U.S.C. § 1395oo(f) (stating that a party may file a civil action within sixty days of the receipt of notice of any final decision by the PRRB or of any reversal, affirmance, or modification by the Secretary of HHS).  Thus, regardless of whether or not the PRRB's dismissal of Amos's claim was a final agency decision, the district court lacked jurisdiction to hear Amos's lawsuit regarding it.

### C.    The Sixty-Day Limitations Period

Third, Amos claims that the district court erred when, in Amos's words, it stated that "the 60day [sic] status [sic] of limitation [sic] had expired for filing a civil claim."  Amos does not explain what she means by this, nor does she attempt to justify her position with any arguments.  Moreover, a review of the district court's ruling on the defendants' motions to dismiss and the magistrate judge's report and recommendation shows that neither court ever said that a sixty-day statute of limitations deadline had expired for Amos to file a civil claim.

While Amos does not explain what limitations period she is referring to, her reference to a sixty-day limitations period likely refers to the fact that, as discussed above, a party has sixty days to file a civil action after the PRRB or the Secretary of HHS renders a final decision on an appeal of an overpayment determination.  See 42 U.S.C. § 1395oo(f).  As stated above, no

12

final decision has been rendered regarding Amos's recent appeal of the 1993 overpayment determination. Likewise, assuming arguendo that the PRRB's dismissal of Amos's claim was a final agency decision (if not, Amos's claim regarding it is barred because she has not exhausted her administrative remedies), Amos did not file a civil suit regarding the dismissal within the sixty-day limitations period but instead waited more than a year before filing suit. Accordingly, Amos fails in her argument that the district court erred when it found that the sixty-day statute of limitations had expired for the filing of a civil claim.

### D. Dismissal Of Conrad & Associates

Finally, Amos argues that the district court erred by granting Conrad's motion to dismiss. According to Amos, Conrad should be held accountable for "submitting fraudulent information violating public policy." Amos also makes the following statement in her appellate brief: "The accountants knew or should have known that employees can not be denied salaries worked for or benefits. These accounts submitted error information causing employees not to be paid." Amos does not explain what she means by this statement.

Under 28 U.S.C. § 1915(3)(2), this court can dismiss a complaint filed in forma pauperis if the complaint is frivolous and malicious or if it fails to state a claim upon which relief may be granted. Furthermore, in order to survive a motion to

13

dismiss, a plaintiff must plead specific facts in her complaint. Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000). Conclusory allegations will not suffice to avoid a motion to dismiss. Id.; Mills v. Crim. Dist. Ct. # 3, 837 F.2d 677, 678 (5th Cir. 1988).

Amos has put forward no concrete allegations whatsoever against Conrad in her complaint, response to Conrad's motion to dismiss, appellate brief, or reply to Conrad's brief on appeal. In her complaint, Amos only mentions Conrad in her jurisdictional allegations and in her prayer for relief. Similarly, in her appellate brief, Amos again fails to state a valid cause of action against Conrad--at most, she vaguely contends that it breached the standard of care applicable to accountants. She does not, however, provide any specifics about how or when this occurred. As the magistrate judge and the district court correctly concluded, Amos has pled no facts that could possibly indicate that Conrad may be liable for any of its actions. Accordingly, Amos's allegations provide no basis for relief against Conrad, and the district court properly dismissed her claims against it.

## IV. CONCLUSION

For the foregoing reasons, the we AFFIRM the judgment of the district court.

14